LATHAM & WATKINS LLP
  Perry J. Viscounty (Bar No. 132143)
*perry.viscounty@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California  92626
(714) 540-1235 / (714) 755-8290 Fax

LATHAM & WATKINS LLP
  Jennifer L. Barry (Bar No. 228066)
*jennifer.barry@lw.com*
12670 High Bluff Drive
San Diego, California  92130
(858) 523-5400 / (858) 523-5450 Fax

HARTMAN TITUS PLC
Bradley P. Hartman (*Pro Hac to be filed*)
*bhartman@hartmantitus.com*
John D. Titus (*Pro Hac Vice to be filed*)
*jtitus@hartmantitus.com*
7114 E. Stetson Drive, Suite 205
Scottsdale, Arizona  85251-3250
(480) 659-0019 / (480) 659-3304 Fax

Attorneys for Plaintiff
THE TRANSLATIONAL GENOMICS RESEARCH INSTITUTE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THE TRANSLATIONAL GENOMICS RESEARCH INSTITUTE, an Arizona non-profit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ATGEN AMERICA INC., a Delaware corporation; ATGEN CO., LTD., a limited company of the Republic of Korea; and DOES 1-10,<br><br>Defendants. | CASE NO. 2:18-CV-00939<br><br>**Complaint For:**<br><br>**(1) Trademark Infringement (Lanham Act, 15 U.S.C. § 1114)**<br><br>**(2) Unfair Competition/False Designation of Origin (Lanham Act, 15 U.S.C. § 1125(a))**<br><br>**(3) Common Law Trademark Infringement**<br><br>**(4) Common Law Unfair Competition**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff The Translational Genomics Research Institute ("TGen" or "Plaintiff"), for its Complaint against Defendants ATGen America, Inc. ("ATGen America"), ATGen Co., Ltd. ("ATGen") (collectively, the "ATGen Defendants"), and Does 1-10 (the "Doe Defendants" and, together with the ATGen Defendants, the "Defendants"), alleges as follows:

## NATURE OF ACTION

1. TGen is a non-profit biomedical research institute. For the last decade and a half, TGen has pioneered cutting-edge, life-saving genomic research, turning research breakthroughs into medical advances that have improved outcomes and quality of life for patients and their families. Indeed, TGen has become a well-known leader in applying genomic analysis and bioinformatics to develop treatments for cancer, neurological disorders, diabetes, and other conditions.

2. In 2016, TGen joined forces with City of Hope, the world-renowned research and treatment center for cancer, diabetes, and other life-threatening diseases, based just northeast of Los Angeles in Duarte, California. Founded in 1913, City of Hope is one of only 49 comprehensive cancer centers in the nation, as designated by the National Cancer Institute. City of Hope has long been a leader in patient care, basic and clinical research, and the translation of science into tangible benefit. As a City of Hope affiliate, TGen has access to City of Hope's state-of-the-art clinical setting in which to convert its research discoveries into cures for patients. Together, TGen and City of Hope are transforming the diagnosis, treatment, and prevention of cancer and other life-threatening diseases.

3. TGen, like City of Hope, is a non-profit organization, whose success depends in large part on the generosity of donors, which include universities and colleges, healthcare providers, corporations and other business entities, and private individuals. TGen's hard-earned reputation and the substantial goodwill associated with its TGEN® trademark (the "TGEN® Mark") are crucial to TGen's ability to secure donations and facilitate the research and development collaborations that,

together, fuel TGen's success.  TGen owns valuable and longstanding rights in the TGEN® Mark, as evidenced by the several incontestable federal registrations it owns for that mark covering a wide range of goods and services related to medical and cancer research and consultation, genetic testing, and various medical diagnosis products.

4.   Defendants operate a for-profit biotech business, based in Korea but with offices in California.  Defendants manufacture and sell biomedical products, including cancer diagnosis kits and research reagents, and provide related services, under the "ATGEN" mark.  Defendants' use of the ATGEN mark in connection with such products and services is likely to cause confusion with the TGEN® Mark.  Despite being notified of TGen's senior rights and the likelihood of confusion created by Defendants' unauthorized use of the ATGEN mark, Defendants continue to market their products and services under that mark.

5.   Accordingly, to put a stop to Defendants' unlawful conduct and obtain compensation for the violations that have occurred thus far, TGen brings this action for federal trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; and common law trademark infringement and unfair competition under California law.

## THE PARTIES

6.   TGen is a non-profit Arizona corporation, having its principal place of business at 445 N. 5th Street, Suite 120, Phoenix, Arizona 85004.

7.   Defendant ATGen America is a Delaware corporation, having its principal place of business at 4221 Wilshire Blvd., Suite 395, Los Angeles, California 90010.

8.   Defendant ATGen is a limited company organized and existing under the laws of the Republic of Korea, having its principal place of business at Institut Paseur Korea 2F, Sampyeong-dong 696, Bundang-gu, Seongnam, Gyeonggi-do 463-400, Korea.

9. The Doe Defendants are persons or entities responsible in whole or in part for the wrongdoing alleged herein. Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts. TGen will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

10. At all relevant times, each Defendant acted as the principal, agent, or representative of the other Defendants. Any action by one of the Defendants was within the scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of each of the other Defendants.

## JURISDICTION AND VENUE

11. Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over TGen's claims for relief for violation of the Lanham Act. Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over TGen's state law claims because the claims are joined with substantial and related claims under the Lanham Act. This Court also has supplemental jurisdiction over TGen's state law claims pursuant to 28 U.S.C. § 1367(a) because all of TGen's claims arise out of a common nucleus of operative facts.

12. This Court has personal jurisdiction over Defendants because they maintain offices, operate facilities, and conduct substantial business in this State.

13. Venue in this Court exists under 28 U.S.C. §§ 1391(b)(1), (2) because Defendants reside in this District and a substantial part of the events giving rise to TGen's claims occurred within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

*TGen's Mission, Activities and Successes*

14. TGen was conceived in early 2002 as a one-of-a-kind genomics research institute where many of the world's leading scientists would turn

1 breakthroughs in genetic research into medical advances benefitting patients and
2 their families.

3     15. Through strategic fundraising and an ardent dedication to that original
4 concept, TGen officially launched in June 2002 and has since grown into a
5 significant force for good.

6     16. TGen's physicians and scientists, working with collaborators in the
7 scientific and medical communities throughout the world, work to unravel the
8 genetic components of complex diseases in adults and children.

9     17. TGen's mission is to rapidly move research discoveries toward patient
10 benefit, a process referred to as translational research. TGen's cutting-edge
11 translational research has improved treatments and quality of life for countless
12 individuals over the last decade and a half.

13     18. TGen furthers its mission by publicizing its research and resources,
14 marketing its goods and services, and inviting donations through its website
15 located at *www.tgen.org*.

16     19. To further advance its mission and accelerate the speed at which
17 scientists and medical staff convert research discoveries into tangible, real world
18 solutions for cancer and other life-threatening diseases, TGen joined forces with
19 City of Hope in 2016.

20     20. As a subsidiary and affiliate of City of Hope, TGen has access to City
21 of Hope's state-of-the art clinical setting in which to convert its genomic research
22 into cures for patients. Together, TGen and City of Hope are transforming the
23 diagnosis, treatment and prevention of cancer and other diseases.

24                             ***TGen's Trademark Rights***

25     21. TGen owns the incontestable U.S. Federal Trademark Registration
26 No. 2,866,034 (the "'034 Registration") for the mark TGEN in connection with
27 *medical research, medical research support services, namely recruitment of*
28 *patients and subjects for various studies collecting and analyzing clinical samples,*

*storing and analyzing clinical data, and DNA sequencing all in the fields of genomics, biomedicine, biosciences, and bioinformatics; and computer software development services in the fields of genomics, biomedicine, biosciences, and bioinformatics* in Class 42; and *training services in the field of genomics, biomedicine, biosciences, and bioinformatics, and providing educational information thereto; and providing training in the use of bioinformatics and genomics research tools* in Class 41. The '034 Registration was issued by the U.S. Patent and Trademark Office (the "USPTO") in July 2004 and indicates that TGen has used the TGEN mark in commerce since at least as early as December 16, 2002.

22. TGen further owns the incontestable U.S. Federal Trademark Registration No. 4,286,238 (the "'238 Registration") for the mark TGEN in connection with *diagnostic preparations for clinical or medical laboratory use; diagnostic preparations for scientific or research use;* and *diagnostic preparations for scientific or research use other than for medical use* in Class 1. The '238 Registration issued in February 2013 and reflects a first use date of at least as early as June 1, 2006.

23. TGen also owns the incontestable U.S. Federal Trademark Registration No. 4,286,239 (the "'239 Registration") for the mark TGEN in connection with *diagnostic agents, preparations and substances for medical purposes; diagnostic preparations for medical or veterinary purposes; diagnostic preparations for medical purposes;* and *preparations for detecting genetic predispositions for medical purposes* in Class 5. The '239 Registration issued in February 2013 and reflects a first use date of at least as early as June 1, 2006.

24. TGen also owns the incontestable U.S. Federal Trademark Registration No. 4,286,235 (the "'235 Registration") for the mark TGEN in connection with *DNA screening for medical purposes; medical and pharmaceutical consultation; medical consulting services in the field of disease*

1 *infection control; providing a web site featuring information in the field of mental*
2 *health and wellness; providing a website featuring information in the field of the*
3 *diagnosis and treatment of cancer and neurological and metabolic disorders;*
4 *providing a website via a global computer network featuring information and*
5 *comprehensive content in the fields of health, cancer, cancer recovery and*
6 *survival; providing an internet website featuring news and information relating to*
7 *diagnosis and treatment of autism; providing cancer screening services; providing*
8 *information in the field of cancer prevention, screening, diagnosis and treatment;*
9 *providing information in the field of diabetes; providing links to the web sites of*
10 *others featuring information about the diagnosis and treatment of cancer;*
11 *providing medical information; providing medical information, consultancy and*
12 *advisory services;* and *providing news and information in the field of medicine* in
13 Class 44.  The '235 Registration issued in February 2013 and reflects a first use
14 date of at least as early as January 1, 2005.
15      25.   In addition, TGen also owns the incontestable U.S. Federal Trademark
16 Registration No. 4,286,233 (the "'233 Registration") for the mark TGEN in
17 connection with *computer software for accessing information directories that may*
18 *be downloaded from the global computer network; computer software for creating*
19 *searchable databases of information and data; computer software for scientific*
20 *analysis of genetic sequences; computer software for use in bioinformatics;*
21 *database management software for biomedical research; downloadable scientific*
22 *and medical data via the internet;* and *downloadable software for genomic and*
23 *proteomic information access and management* in Class 9.  The '233 Registration
24 issued in February 2013 and reflects a first use date of at least as early as June 1,
25 2005.
26      26.   TGen's federal registrations described above are collectively referred
27 to herein as the "TGen Registrations."  The incontestable TGen Registrations
28 constitute conclusive evidence that the registered marks are valid, and that TGen is

1  entitled to the exclusive use of the registered marks in commerce throughout the
2  United States in connection with the registered goods and services.
3      27.    TGen has used the TGEN® Mark in commerce since at least 2002.
4  TGen's use has been substantially continuous and exclusive. TGen therefore owns
5  longstanding common law rights in the TGEN® Mark.
6      28.    TGen has attained strong name recognition in the TGEN® Mark. The
7  mark has come to be associated with TGen and identifies TGen as the source of the
8  medical and cancer research and consultation services, genetic testing services and
9  products, and the various medical diagnosis products offered by TGen in
10 connection with the mark.
11     29.    TGen has developed substantial goodwill in the TGEN® Mark.

*Defendants' Infringing Activities*

13     30.    On or around January 9, 2014, ATGen caused ATGen America to be
14 incorporated in the State of Delaware.
15     31.    On or around January 16, 2014, ATGen America filed a Statement
16 and Designation by Foreign Corporation in the State of California.
17     32.    On or around June 4, 2014, ATGen filed U.S. Application Serial No.
18 86/300715 (the "'715 Application") with the USPTO, indicating an intent to use
19 the "ATGEN" word and design mark depicted below:



    33.    The '715 Application claimed an intent to use the ATGEN mark in
connection with a variety of goods and services related to scientific and medical
research, including diagnostic kits for clinical laboratory and medical research use,
"online retail store services," and "cancer related proteins," and for, among other
things, "use by others in manufacturing pharmaceutical and veterinary

1  preparations" and other "veterinary or medical purposes" in Classes 1, 5, 35, 40,
2  and 42.
3       34.   On or around September 22, 2015, TGen instituted an opposition
4  proceeding against the '715 Application, which is currently pending.
5       35.   Throughout the pendency of the opposition proceeding, TGen has
6  requested that ATGen Defendants withdraw the '715 Application and refrain from
7  using the confusing ATGEN mark.
8       36.   The ATGen Defendants have refused to withdraw the '715
9  Application and have begun using the ATGEN mark in commerce, offering goods
10 and services for sale in the United States that are substantially similar to the goods
11 and services provided by TGen under the TGEN® Mark.
12      37.   For example, the ATGen Defendants offer a wide array of biomedical
13 research products for sale on their website. *See* http://atgenglobal.com/products.
14      38.   ATGen describes itself on its website as "a biotech company that
15 manufactures and supplies proteins and antibodies worldwide" and explains that it
16 is "also involved in the research and development of new medicines based on
17 novel protein and peptide therapeutic applications." *See*
18 http://atgenglobal.com/aboutus.
19      39.   ATGen further explains the importance of forging research
20 collaborations with "researchers in both academia and the industry" to achieve its
21 goal, which—similar to TGen's mission—is to "help cure diseases such as
22 parkinsons, alzheimers, obesity, diabetes, heart diseases, cancer, and other
23 metabolic diseases." *See id.*
24      40.   Under the ATGen mark, ATGen's website expressly solicits
25 "partnerships with pharmaceutical and industrial companies for development of
26 future products" and markets its products and services to both "major biotech
27 companies" and "researchers directly." *See id.*
28      41.   ATGen's website includes a "Contact us" page, on which it provides

the address, telephone number, and office hours for ATGen America, located on Wilshire Boulevard in Los Angeles, California.

42. As TGen has repeatedly communicated to the ATGen Defendants, the ATGen mark and the TGEN® Mark are similar in appearance, sound, and commercial connotation and are likely to be confused by consumers, research institutes, medical professionals, scientists, and others who encounter the marks in commerce. Despite this likelihood of confusion and TGen's clear prior rights in its TGEN® Mark, the ATGen Defendants have refused to cease their infringing activities.

*TGen is Suffering Harm from Defendants'
Continuing Infringement and Unlawful Conduct*

43. Due to TGen's renown as a groundbreaking translational research institute and City of Hope affiliate, and the corresponding recognition of the TGEN® Mark, relevant consumers encountering the ATGEN mark will likely suffer confusion and mistakenly believe that Defendants and their services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with TGen. Defendants will thus enjoy the benefits of TGen's reputation and goodwill based on this consumer confusion, to TGen's detriment.

44. Defendants' continued use of the ATGEN mark in commerce violates TGen's valuable intellectual property rights in the TGEN® Mark, and this knowing, intentional, and willful infringement is damaging TGen.

45. Because of Defendants' continuing willful infringement and unlawful conduct, TGen is now forced to bring this Complaint to protect its valuable intellectual property rights. TGen has retained counsel and incurred attorneys' fees and costs (and it continues to incur those fees and costs) to prosecute this lawsuit and pursue its claims.

46. TGen's interests in protecting its intellectual property rights and product from consumer confusion outweigh any harm to Defendants. The public

interest is best served by granting TGen's requested relief against Defendants.

# FIRST CLAIM FOR RELIEF

### *Federal Trademark Infringement – 15 U.S.C. § 1114*

47. TGen realleges and incorporates by reference all of the factual allegations set forth above.

48. TGen owns the TGEN® Mark and the TGen Registrations. The TGEN® Mark is strong and distinctive and designates TGen as the source of all goods and services advertised, marketed, sold, or used in connection with the TGEN® Mark.

49. TGen is the senior user of the TGEN® Mark, as it began use of the mark in interstate commerce prior to Defendants' first use of their infringing ATGEN mark.

50. None of the Defendants has authorization, license, or permission from TGen to market and sell any goods or services under the TGEN® Mark or any confusingly similar mark, like the ATGEN mark.

51. The ATGEN mark is confusingly similar to the TGEN® Mark in appearance, sound, and commercial connotation and is used with goods and services that are substantially similar to the goods and services with which the TGEN® Mark has come to be associated in the minds of the same consumers, research institutes, medical professionals, scientists, and others to whom Defendants market their goods and services.

52. Defendants were aware of the TGEN® Mark prior to their first use of the mark in interstate commerce, as they were on constructive notice based on the TGen Registrations and, at the very least, based on receipt of TGen's cease and desist correspondence dated June 30, 2014. Thus, Defendants' unauthorized use of the confusingly similar ATGEN mark was and is knowing, intentional, and willful.

53. As a direct and proximate result of Defendants' wrongful conduct, TGen has been and will continue to be damaged.

54. Defendants' actions thus constitute trademark infringement.

55. Unless an injunction is issued enjoining any continuing or future use of the ATGEN mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably damage TGen.

56. Defendants' activities have caused and will continue to cause irreparable harm to TGen, for which it has no adequate remedy at law, in that: (A) the TGEN® Mark and the TGen Registrations comprise unique and valuable property rights that have no readily determinable market value; (B) Defendants' infringement interferes with TGen's goodwill and relationships with consumers, research institutes, medical professionals, scientists, donors, and others and will substantially harm TGen's reputation as a source of high-quality biomedical research and related goods and services; and (C) Defendants' wrongful conduct, and the damages resulting to TGen, are continuing. Accordingly, TGen is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

57. Pursuant to 15 U.S.C. §1117(a), TGen is entitled to an order: (A) requiring Defendants to account to TGen for any and all profits they derived from their actions, to be increased in accordance with the applicable provisions of law; and (B) awarding all damages sustained by TGen that were caused by Defendants' conduct.

58. Defendants' conduct was intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), TGen is therefore entitled to an award of treble damages against Defendants.

59. Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus TGen is entitled to an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

*Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)*

60. TGen realleges and incorporates by reference all of the factual

allegations set forth above.

61.  TGen owns the TGEN® Mark, the TGen Registrations, and longstanding common law rights in the TGEN® Mark.  The TGEN® Mark is strong and distinctive and designates TGen as the source of all goods and services advertised, marketed, sold, or used in connection with the TGEN® Mark.

62.  In addition, by virtue of TGen's substantial promotion and use of the TGEN® Mark in connection with its goods and services, the TGEN® Mark has acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States, associate the TGEN® Mark with a single source of services.

63.  TGen is the senior user of the TGEN® Mark, as it began use of the mark in interstate commerce prior to Defendants' first use of their infringing ATGEN mark.

64.  The ATGEN mark is similar to the TGEN® Mark in appearance, sound, and commercial connotation and is used with goods and services that are substantially similar to the goods and services with which the TGEN® Mark has come to be associated in the minds of the same consumers, research institutes, medical professionals, scientists, and others to whom Defendants market their goods and services.

65.  Defendants were aware of the TGEN® Mark prior to their first use of the mark in interstate commerce, as they were on constructive notice based on the TGen Registrations and, at the very least, based on receipt of TGen's cease and desist correspondence dated June 30, 2014.  Thus, Defendants' unauthorized use of the confusingly similar ATGEN mark was and is knowing, intentional, and willful.

66.  On information and belief, through their use of the confusingly similar ATGEN mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that TGen somehow authorized, originated, sponsored, approved, licensed, or

participated in Defendants' use of the confusingly similar ATGEN mark.

67. In fact, there is no connection, association, or licensing relationship between TGen and Defendants, nor has TGen ever authorized, licensed, or given permission to any of the Defendants to use the TGEN® Mark or any confusingly similar mark, like the ATGEN mark, in any manner.

68. Defendants' use of the ATGEN mark will likely cause confusion as to the origin and authenticity of Defendants' goods and services and will likely cause others to mistakenly believe that there is a relationship between Defendants and TGen.

69. As a direct and proximate result of Defendants' wrongful conduct, TGen has been and will continue to be damaged.

70. Defendants' actions thus constitute false designation of origin and unfair competition.

71. Defendants' activities have caused and will continue to cause irreparable harm to TGen, for which it has no adequate remedy at law, in that: (A) the TGEN® Mark and the TGen Registrations comprise unique and valuable property rights that have no readily determinable market value; (B) Defendants' infringement interferes with TGen's goodwill and relationships with consumers, research institutes, medical professionals, scientists, donors, and others and will substantially harm TGen's reputation as a source of high-quality biomedical research and related goods and services; and (C) Defendants' wrongful conduct, and the damages resulting to TGen, are continuing. Accordingly, TGen is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

72. Pursuant to 15 U.S.C. §1117(a), TGen is entitled to an order: (A) requiring Defendants to account to TGen for any and all profits they derived from their actions, to be increased in accordance with the applicable provisions of law; and (B) awarding all damages sustained by TGen that were caused by Defendants' conduct.

73. Defendants' conduct was intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), TGen is therefore entitled to an award of treble damages against Defendants.

74. Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus TGen is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

*Common Law Trademark Infringement*

75. TGen realleges and incorporates by reference all of the factual allegations set forth above.

76. TGen has valid and protectable common law rights in the TGEN® Mark.

77. TGen is the senior user of the TGEN® Mark.

78. Defendants' conduct constitutes infringement of TGen's common law rights in the TGEN® Mark.

79. Defendants' use of the confusingly similar ATGEN mark with unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to mistakenly believe that there is a relationship between Defendants and TGen.

80. Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of TGen's reputation and the substantial goodwill built up in the TGEN® Mark.

81. As a direct and proximate result of Defendants' wrongful conduct, TGen has been and will continue to be damaged.

82. Unless an injunction is issued enjoining any continuing or future use of the ATGEN mark, such use is likely to continue to cause confusion and thereby irreparably damage TGen. TGen has no adequate remedy at law. Accordingly, TGen is entitled to an injunction.

## FOURTH CLAIM FOR RELIEF

### *Common Law Unfair Competition*

83. TGen realleges and incorporates by reference all of the factual allegations set forth above.

84. TGen has expended significant time and expense in developing the TGEN® Mark and the life-saving goods and services it markets, offers, and provides under that mark. The TGEN® Mark has developed a substantial positive reputation and goodwill in the marketplace.

85. Through their wrongful conduct, Defendants have misappropriated Plaintiff's efforts and are exploiting the TGEN® Mark and TGen's reputation to market and sell Defendants' goods and services under the ATGEN mark. These actions constitute unfair competition.

86. As a direct and proximate result of Defendants' wrongful conduct, TGen has been and will continue to be damaged.

87. Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, TGen will continue to be damaged irreparably. TGen has no adequate remedy at law. Accordingly, TGen is entitled to an injunction.

88. On information and belief, Defendants have acted willfully, intentionally, and maliciously, such that TGen is entitled to an award of punitive damages.

## PRAYER

WHEREFORE, TGen prays for the following relief:

A. An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, to:

    1. cease all use and never use the ATGEN mark, or any other mark likely to cause confusion with the TGEN® Mark, in

     connection with the promotion, advertising, marketing, offering, or providing of any goods or services;

2.  never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any goods or services offered, promoted, marketed, advertised, provided, or sold by Defendants are in any manner associated or connected with TGen, or are licensed, approved, or authorized in any way by TGen;

3.  never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of their goods or services, are related to, or authorized or sponsored by, TGen;

4.  never unfairly compete with TGen in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the advertising, marketing, offering, or providing of goods or services bearing the ATGEN mark or TGEN® Mark;

5.  never apply for or seek to register any mark that is likely to cause confusion with the TGEN® Mark;

6.  never register or use any social media accounts or usernames that contain the ATGEN mark or TGEN® Mark;

7.  never register or use any domain name that contains the ATGEN mark or TGEN® Mark; and

8.  transfer to TGen all domain names and social media accounts/usernames in Defendants' possession, custody or control that include the name "atgen" or "tgen."

B.  An order, pursuant to 15 U.S.C. § 1116(a), that within thirty (30) days

after the entry and service on Defendants of an injunction, Defendants file with this Court and serve upon TGen's counsel a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

C. An order pursuant to 15 U.S.C. § 1118 directing Defendants to deliver up and destroy all infringing products, labels, signs, prints, packages, wrappers, receptacles, advertisements, plates, molds, matrices, and/or other means of making the same.

D. To give practical effect to the Court's injunction, the social networking service or entity (e.g., Twitter, Facebook) related to any of the social media accounts subject to this Order shall, within fourteen (14) days of receipt of the Order, transfer those accounts to TGen if Defendants have not already done so.

E. To give practical effect to the Court's injunction, the Registry or Registrar for any of the prohibited domain names shall, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those domain names to TGen if Defendants have not already done so.

F. An order finding that Defendants have infringed TGen's federally registered trademark in violation of 15 U.S.C. § 1114.

G. An order finding that Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

H. An order finding that Defendants have engaged in common law trademark infringement.

I. An order finding that Defendants have engaged in common law unfair competition.

J. An order awarding TGen damages as follows:

    1. TGen's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a

trebling of those damages, pursuant to 15 U.S.C. § 1117(a); and

    2.    Punitive damages pursuant to California common law.

K.    An order finding that this is an exceptional case and, under 15 U.S.C. § 1117(a), awarding TGen its reasonable attorneys' fees.

L.    An order awarding TGen all of its costs, disbursements, and other expenses incurred due to Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a).

M.    An order awarding TGen interest.

N.    An order awarding TGen such other relief as the Court deems just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 38-1, Plaintiff hereby demands a trial by jury.

Dated: February 6, 2018          Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Jennifer L. Barry
Perry J. Viscounty
Jennifer L. Barry

*Attorneys for Plaintiff*
THE TRANSLATIONAL GENOMICS RESEARCH INSTITUTE